OPINIONS OF THE SUPREME COURT OF OHIO
**** SUBJECT TO FURTHER EDITING ****

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

Cleveland Bar Association v. Sweeney.
[Cite as Cleveland Bar Assn. v. Sweeney (1994),      Ohio St.3d      .]
Attorneys at law -- Misconduct -- Two-year suspension with one year suspended, two years of monitored probation and full restitution of all outstanding claims as a condition for reinstatement -- Engaging in conduct prejudicial to the administration of justice -- Engaging in conduct adversely reflecting on fitness to practice law -- Failing to prepare a legal matter properly -- Knowingly advancing a claim or defense that is unwarranted under existing law -- Knowingly making a false statement of law or fact -- Neglecting an entrusted legal matter.
(No. 94-487 -- Submitted September 13, 1994 -- Decided December 20, 1994.)

On Certified Report by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 92-50.

By a complaint filed on October 19, 1992, relator, Cleveland Bar Association, charged respondent, Antonio Sweeney of Cleveland, Ohio, Attorney Registration No. 0006003, with six counts of misconduct involving violations of several Disciplinary Rules. Respondent answered, denying the allegations of misconduct. The matter was heard by a panel of the Board of Commissioners on Grievance and Discipline of the Supreme Court ("board") on April 13, 1993. Counts II, III and VI were dismissed at the hearing when relator was unable to produce witnesses to prove those allegations.

Relator thereafter filed an amended complaint on May 26, 1993, alleging four additional counts of misconduct implicating several Disciplinary Rules. Respondent answered, denying the allegations of misconduct. On November 23, 1993, the panel convened a second hearing to consider the allegations asserted in the amended complaint. The panel dismissed Count III of the amended complaint with prejudice when relator could not produce supporting witnesses at the hearing.

The evidence submitted to support count one of the original

complaint established that respondent represented his then-wife, Angela Lang-Sweeney ("Lang-Sweeney"), in connection with a 1987 automobile accident involving Lang-Sweeney and Sarah Hunter. Respondent engaged in a series of settlement negotiations with Hunter's insurance carrier, Metropolitan Insurance Company ("Metropolitan"), over the course of several months. When the negotiations failed to produce results favorable to his client, respondent filed an action against Metropolitan in which he named Lang-Sweeney and Hunter as plaintiffs. The complaint asserted that Metropolitan had refused in bad faith to settle the claim within the policy limits, thereby exposing Hunter to liability and severe emotional distress. Prior to the action being filed, Hunter neither discussed nor authorized respondent's representation of her. Hunter had no knowledge of the existence of the action until Metropolitan brought it to her attention. In defense of his actions, respondent claimed he named Hunter as a plaintiff in the action based upon his belief that she was an "involuntary plaintiff" or "necessary party" pursuant to Civ.R. 19. The trial court granted summary judgment in favor of Metropolitan and approved a motion for sanctions requiring respondent to pay all Metropolitan's attorney fees and costs plus $1,500 to Hunter for her embarrassment and inconvenience.

The evidence submitted to support count four of the original complaint established that Annette Shields retained respondent in September 1987 to represent her in a medical malpractice action. Respondent filed a complaint against St. Luke's Hospital in Cleveland and certain physicians alleging Shields had developed Asherman's syndrome and had become sterile as a result of negligent medical care she had received while a patient at St. Luke's. An arbitration board recommended that Shields recover $1,250,000 from the defendants. Thereafter, the case proceeded to trial and on June 26, 1989, a jury returned a verdict in favor of the defendants. Respondent and Shields agreed that the jury's decision should be appealed, for which Shields paid respondent $1,000 toward the preparation of the trial transcript. Respondent then filed a notice of appeal on Shield's behalf with the Eighth District Court of Appeals on July 27, 1989. From August 1989 until January 1990, respondent requested and the court granted several extensions for Shields to file her merit brief. On January 19, 1990, the court approved one final extension until January 23, 1990. When respondent failed to file a brief on behalf of Shields by the deadline, the court of appeals sua sponte dismissed the appeal. Respondent filed a motion for reconsideration coupled with a tendered brief, but the court of appeals refused any further consideration of the case. As an explanation for his failure to file a timely merit brief, respondent claimed that he had been involved in an automobile accident while the appeal was pending, and that a rough draft of the brief and the transcript had been lost due to the negligence of a taxi-cab driver.

The evidence submitted to support count five of the original complaint established that in June 1986 Andrea Holmes-Strattonbey ("Strattonbey") retained respondent to represent her in connection with a personal injury action. Respondent filed a complaint on Strattonbey's behalf against Juanita Bailey et al., who in turn filed a counterclaim seeking damages from Strattonbey. The case was referred to an arbitration panel which ultimately recommended that neither party should recover from the other. Thereafter, on

November 29, 1989, respondent negotiated a settlement with Bailey's insurance carrier, State Farm Insurance Company, pursuant to which State Farm issued a check payable to Strattonbey and respondent in the amount of $2,250.  Respondent endorsed both Strattonbey's name and his own on the check, and deposited the money into his personal account.  He then sent a check drawn on his general escrow account in the amount of $655 to Strattonbey representing her portion of the settlement.  In addition to the draft, respondent mailed Strattonbey a release and an itemization of all deductions.  The itemization indicated respondent had withheld $1,595 for expenses incurred during the case, including $900 for attorney fees, leaving Strattonbey with a net recovery of $655.  Strattonbey refused to sign the release or to negotiate the check, claiming respondent had settled the case absent her approval or knowledge.  Respondent attempted to tender the full settlement amount back to State Farm, but State Farm refused to accept it asserting the case had been fully resolved.  Uncertain what should be done with the funds, respondent filed an action for declaratory judgment, in response to which Strattonbey filed a counterclaim.  The trial judge entered a default judgment in favor of Strattonbey and awarded her $9,000 plus reasonable attorney fees.  Respondent and Strattonbey ultimately agreed to settle the matter for $3,700 which respondent has since paid in full.

The evidence offered in support of the first count of the amended complaint established that Linda Taylor retained respondent in October 1988 to represent her in an action relating to the death of her brother.  Respondent initially filed a complaint ("first complaint") on behalf of Taylor and her sister in the Cuyahoga County Court of Common Pleas.  On March 1, 1989, Taylor voluntarily dismissed the first complaint.  Thereafter, respondent filed a complaint ("second complaint") in federal court in Cleveland on March 21, 1989, asserting, inter alia, a violation of Section 1983, Title 42, U.S. Code, the Civil Rights Act.  On April 18, 1990, the district judge issued an order to serve as notice to respondent that the claim would be dismissed with prejudice for lack of prosecution unless respondent supplied proof of perfected service on the defendants and took some substantive action.  Respondent failed to obtain valid service.  Consequently, the district judge dismissed the case with prejudice on May 24, 1990, and no appeal was taken.  On May 14, 1991, respondent refiled the identical complaint ("third complaint") in federal court.  Upon motion of the defendants, the district judge dismissed the complaint with prejudice on the grounds of res judicata.  Respondent then filed a notice of appeal on behalf of Taylor attacking the dismissal of the second complaint without discussing the issues related to the third complaint.  The federal court of appeals determined that respondent's brief was deceptive and misleading, noted that the time for appealing the dismissal of the second complaint had long since expired, and awarded the defendants double costs for a frivolous appeal.  Respondent admitted that he made mistakes in his handling of the Taylor case, but denied intentionally misleading the court of appeals.  Respondent further acknowledged that he has not paid the costs the federal appellate court assessed against him.

The evidence offered in support of count two of the amended complaint established that in February 1988 Queen E. Hatten paid respondent a retainer of $1,700 so that he would represent her in connection with an age-discrimination claim.  On February 26, 1988,

respondent filed a complaint on Hatten's behalf in federal court against Hatten's former employer, Metropolitan Life Insurance Company ("Metropolitan"), alleging that Hatten had been wrongfully discharged due to her age. On January 31, 1990, Metropolitan filed a motion to compel plaintiff to cooperate in discovery requests. Nearly a year later when respondent had failed to produce any of the information Metropolitan requested, the district judge dismissed the action pursuant to Fed. R. Civ. P. 37(b)(2), citing plaintiff's unjustifiable resistance to discovery. Throughout the pendency of the claim, respondent failed to return Hatten's phone calls, and failed to inform her of the dismissal. Hatten did not learn of the dismissal until sometime in 1992, when she contacted respondent's office and one of his employee's informed her of the case's status. Respondent admitted that the dismissal of Hatten's case stemmed from the fact that he "was asleep at [the] switch" while handling the case. On September 28, 1992, Hatten and respondent executed a release, whereby respondent agreed to pay Hatten $7,000 in full satisfaction of any claim Hatten may have had in connection with the terminated discrimination action. Respondent has made some payments toward that debt.

The evidence offered in support of count four of the amended complaint established that on July 16, 1991, respondent filed a complaint in the Cuyahoga Court of Common Pleas on behalf of himself and his then-wife Angela Lang-Sweeney against Lazarus and Eric Hunter. The action involved a car accident where Lazarus Hunter allegedly ran a red light and collided with respondent's vehicle, causing personal injury to respondent and loss of consortium to respondent's wife. Attached to the complaint were the affidavits of Shirley Jones and Johnny Smith, two individuals who had observed the accident. The signatures of the witnesses were purportedly notarized by James A. Gay, one of respondent's associates. Ella Wilson, respondent's former secretary, admitted to signing Gay's signature on each of the affidavits pursuant to Gay's instructions. Respondent did not know that Wilson had signed on behalf of Gay. Respondent also had been unaware of the fact that his secretary had attached the affidavits to the complaint prior to filing.

As mitigation, respondent presented testimony from six judges and one practicing attorney, each of whom described respondent's professionalism and competency as an attorney. Respondent also testified on his own behalf expressing his sorrow for the manner in which some of his cases were handled, but he reiterated his position that he thought he had been acting zealously within the bounds of the law.

The panel concluded based upon the evidence submitted during the two hearings that respondent had engaged in multiple acts of misconduct. With respect to the Count I of the original complaint, the panel determined respondent violated DR 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice), 1-102(A)(6) (engaging in conduct adversely reflecting upon his fitness to practice law), 6-101(A)(2) (failing to prepare a legal matter properly), 7-102(A)(2) (knowingly advancing a claim or defense that is unwarranted under existing law), and 7-102(A)(5) (knowingly making a false statement of law or fact). Under Count IV of the original complaint, the panel determined that respondent violated DR 6-101(A)(3) (neglecting a legal matter entrusted to him). The panel also concluded that respondent violated DR

6-101(A)(3) in conjunction with Counts I and II of the amended complaint. The remaining counts of the original and amended complaints either were dismissed or not proven by clear and convincing evidence. In light of respondent's pattern of misconduct, relator urged the panel to permanently disbar respondent. The panel determined that respondent's actions did not warrant disbarment, but rather recommended that respondent be suspended from the practice of law for a period of one year with six months of that period suspended. Further, the panel recommended that respondent be placed on probation for a period of two years, during which time the Cleveland Bar Association would monitor the management of his practice. The board adopted the panel's findings and recommendations.

Thomas H. Terry III, Thomas Skulina and Mary L. Cibella, for relator.
William T. Doyle, for respondent.

Alice Robie Resnick, J. This court accepts the board's findings of fact and conclusions of law. However, we modify the recommendation in two respects. First, we increase respondent's period of suspension from one year to two years with one year of that term suspended. Second, we condition respondent's reinstatement upon the requirement that he make full restitution of all outstanding claims identified and proven in the within disciplinary action. Accordingly, respondent is suspended from the practice of law for a period of two years with one year suspended, placed on two years of monitored probation, and required to make full restitution as outlined above. Costs taxed to respondent.

Judgment accordingly.

A.W. Sweeney, Douglas and Pfeifer, JJ., concur.
Moyer, C.J., and Wright, J., dissent.
F.E. Sweeney, J., not participating.
Moyer, C.J., dissenting. I am unable to agree with the sanction imposed by the majority and, therefore, respectfully dissent.

The majority opinion sets forth a pattern of conduct beginning five years after respondent's admission to the bar of Ohio that caused the Cleveland Bar Association to recommend that respondent be disbarred from the practice of law in Ohio. His conduct ranged from filing an action and settling a claim without a party's approval; failure to obtain valid service on behalf of a client; failure to pay costs to a federal appeals court; failure to cooperate with discovery requests, thereby causing a client's case to be dismissed; and the assessment of double court costs for the filing of a "deceptive" and "misleading" brief in a federal court of appeals. The counts in the complaint upon which respondent is sanctioned are not isolated incidents, nor are they explained by some external events in respondent's life. Respondent's excuses place blame on other parties.

A lawyer whose pattern of conduct has caused the Board of Commissioners on Grievances and Discipline to conclude that he has: engaged in conduct prejudicial to the administration of justice; engaged in conduct adversely reflecting upon his fitness to practice law; failed to prepare a legal matter properly; knowingly advanced a claim or defense that is unwarranted; and knowingly made a false statement of law or fact, should not receive a sanction

from this court that enables the lawyer to be readmitted to the practice of law without a review by the discipline process pursuant to Gov. Bar R. V(10).  I would therefore indefinitely suspend respondent from the practice of law.

Wright, J., concuyrs in foregoing dissenting opinion.